IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LATANYA LYNN JACKSON,

        Plaintiff,

    v.

HUMANA,

        Defendant.

No. 18-cv-02413
Judge Franklin U. Valderrama

## MEMORANDUM OPINION AND ORDER

Plaintiff Latanya Lynn Jackson (Jackson) worked at Defendant Humana Insurance Company (Humana) as a Customer Care Specialist until Humana terminated Jackson. Jackson filed suit against Humana, alleging that Humana discriminated against her because of her disability and failed to accommodate her in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 1201 *et seq*. R. 1, Compl.[1] Jackson also alleges that she was subject to a hostile work environment and was retaliated against for raising concerns about alleged harassment and discriminatory treatment. *Id*. Humana moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). R. 51, Mot. Summ. J. For the reasons that follow, Humana's motion is granted.

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

## Background

### I.    Local Rule 56.1 Statements and Responses

As an initial matter, the Court must address the parties' Local Rule 56.1 statements of material facts. When "a party moves for summary judgment in the Northern District of Illinois, it must submit a memorandum of law, a short statement of undisputed material facts [(L.R. 56.1 Statement)], and copies of documents (and other materials) that demonstrate the existence of those facts." *ABC Acquisition Co., LLC v. AIP Prod. Corp.*, 2020 WL 4607247, at *7 (N.D. Ill. Aug. 11, 2020) (citing N.D. Ill. Local R. 56.1(a)). The Local Rule 56.1 statement must cite to specific pages or paragraphs of the documents and materials in the record. *Id.* (citing *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 818 (7th Cir. 2004)). Under Local Rule 56.1(b) and (e), the nonmovant must counter with a response to the separate statement of facts, and either admit each fact, or, "[t]o dispute an asserted fact, a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact." N.D. Ill. Local R. 56.1(e)(2)–(3). "Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." *Id.*; *see Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion."); *see also Daniels v. Janca*, 2019 WL 2772525, at *1–2 (N.D. Ill. July 2, 2019). If the non-moving party asserts additional facts not included in the moving party's statement of facts, the non-

moving party is to file a statement of additional material facts "that attaches any cited evidentiary material not attached to the [moving party's statement of facts] or the non-moving party's response [thereto]." N.D. Ill. Local R. 56.1(b)(3). The Seventh Circuit has "consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 414 (7th Cir. 2019).

As Humana points out in its reply, Jackson admits most of Humana's Local Rule 56.1 statements of material fact, and even where she "disputes" statements, she fails to cite to any evidentiary material that controverts the asserted fact. R. 58, Reply at 2; Pl.'s Resp. DSOAF.[2] As a result, the Court accepts as true the facts set forth in Humana's Local Rule 56.1 statement "to the extent th[ose] facts [a]re supported by admissible and docketed evidence." *Kreg*, 919 F.3d 405, 411 (7th Cir. 2019) (internal quotation marks omitted). Of course, the Court also considers Jackson's statement of additional material facts to the extent that it is supported by record evidence before the Court. N.D. Ill. Local R. 56.1(b)(3).

## II.   Material Facts

The following undisputed facts are set forth as favorably to Jackson, the non-movant, as the record and Local Rule 56.1 permit. *Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012). On summary judgment, the Court assumes the truth of those

---

[2]Citations to the parties' Local Rule 56.1 Statements of Material Facts are identified as follows: "DSOF" for Humana's Statement of Undisputed Facts (R. 53); "Pl.'s Resp. DSOF" for Jackson's Response to Humana's Statement of Undisputed Facts (R. 56); "PSOAF" for Jackson's Statement of Additional Facts (R. 55); and "Def.'s Resp. PSOAF" for Humana's Response to Jackson's Statement of Additional Facts (R. 59).

facts, but does not vouch for them. *Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 281 (7th Cir. 2015).

## A. Jackson's Role as a Customer Care Specialist

Humana employed Jackson as a Customer Care Specialist from July 21, 2014 to May 16, 2016. DSOF ¶¶ 7, 80. Jackson worked in the Vitality Call Ops department at Humana's Chicago office. *Id.* ¶ 7. As a Customer Care Specialist, Jackson worked in a call center setting, and her responsibilities included but were not limited to: engaging with Humana Vitality members to motivate and encourage them; providing members with guidance on transactions, troubleshooting, and complaints; educating members about products and services; and interacting with members. *Id.* ¶ 9. Jackson was also expected to meet established expectations and take responsibility for achieving results. *Id.* Jackson had 25 years' experience in call center roles prior to her employment with Humana. *Id.* ¶ 8.

For approximately her first year of employment, Jackson reported directly to Chelsea Bjarnarson, who physically worked in Green Bay, Wisconsin. DSOF ¶ 10. For most of 2015 to about February 2016, Jackson reported directly to Abbey Bernath, who was located in Chicago. *Id.* ¶ 11. In approximately February 2016, Jackson began reporting directly to Jennifer Stoltenberg, who was located in Wisconsin. *Id.*

## B. Jackson's Performance Counseling and Call Manipulation

During her employment with Humana, Jackson received performance counseling and coaching, related primarily to attendance and phone manipulation/call avoidance. DSOF ¶¶ 12–13, 17, 21–22, 34, 44, 53–54, 66–70. Phone

4

manipulation or call avoidance, as the title suggests, happens when a call specialist engages in conduct that cause that specialist to prematurely end or transfer member calls. *See id.* Conduct that evidenced Jackson's engagement in phone manipulation included: routing calls back to the queue in order for them to be handled by other teammates; leaving dead air by not greeting members immediately when answering a call; placing and leaving members on hold for extended periods; and manually hitting/using a "release button" in order to disconnect member calls before the call ended. *Id.* During her deposition, Jackson denied engaging in any phone manipulation. PSOAF ¶ 9 (citing R. 53-1, Jackson Dep. Tr. 251). Humana contends that the cited evidence does not support that assertion. Def.'s Resp. PSOAF ¶ 9. A review of the record reveals that Jackson testified that she did not believe or recall that she engaged in phone manipulation, specifically stating that she had "no recollection of [doing so]," and that she believed that her supervisors were making false reports about her. Jackson Dep. Tr. 252:7–254:7.

Jackson states that the evidence shows that the computer surveillance or review equipment was faulty. PSOAF ¶ 9 (citing Jackson Dep. Tr. 68). Page 68 of Jackson's deposition transcript was not included as part of either parties' summary judgment filings; as stated above, Jackson was required to produce record evidence in support of her statements of additional facts if such evidence was not included with Humana's statement of facts or Jackson's response thereto. *See* N.D. Ill. Local R. 56.1(b)(3). Because Jackson's statement about faulty computer surveillance or review equipment is not supported by evidence in the record, the Court does not consider it.

*See, e.g.*, *ABC Acquisition Co.*, 2020 WL 4607247, at *7–8. Nor does the Court consider Humana's response to Jackson's statement of additional facts relying on the same, unfiled pages of Jackson's deposition. Def.'s Resp. PSOAF ¶ 9 (citing Jackson Dep. Tr. 68:14–68:24); *see ABC Acquisition Co.*, 2020 WL 4607247, at *8 (courts can require strict compliance with Local Rule 56.1 but "cannot play favorites"). The evidence cited in the parties' Local Rule 56.1 statements and responses, that is in the record before the Court, establishes that Humana confirmed there were no technical issues with Jackson's phone. Def.'s Resp. PSOAF ¶ 9 (citing R. 53-2, Bjarnarson Decl. ¶ 45). However, Jackson stated—in a portion of Jackson's deposition transcript filed before the Court—that there were phone issues with her phone in 2015 because it was showing as disconnected, and that she "believe[d]" that those issues continued into 2016 because she continued to be accused of phone manipulation. Jackson Dep. Tr. 253:17–254:20.

The evidence before the Court, when construed in the light most favorable to Jackson, shows that Jackson was coached about most forms of call manipulation as early as December 21, 2015, but that she was not counseled on improper use of the release button until March 2016. *See* PSOAF ¶ 10; Def.'s Resp. PSOAF ¶ 10.

On January 20, 2016, Ms. Aherns sent Jackson an email stating that she had "exceed[ed] call quality metrics for 8 months straight." PSOAF ¶ 13; Def.'s Resp. PSOAF ¶ 13. However, on January 29, 2016, Ms. Bernath sent Jackson an email about reducing the time of her after call work (ACW), as hers averaged between about four and six minutes, which was higher than the team expectation of 120 seconds.

6

DSOF ¶¶ 22–24, 44. Jackson continued receiving counseling on her ACW until her termination in May 2016. *Id.* ¶ 44.

### C. Jackson's Anxiety

Beginning on or about September 18, 2014, Jackson started receiving treatment from Dr. Robinson, a medical professional, for anxiety, panic attacks, and sadness. PSOAF ¶ 1 (citing R. 54, P1–5, P14). Jackson testified that she believed that she first notified her supervisor in September or October 2014 that she had been diagnosed with anxiety, and that she included that diagnosis in several emails through her employment. *Id.* ¶ 7 (citing Jackson Dep. Tr. 88:23–7). On January 29, 2016, Jackson again informed Ms. Bernath by email that she had been diagnosed with anxiety and that she felt that she was being subjected to harassment and discrimination. DSOF ¶¶ 24–26. The following day, Jackson forwarded this email to Ms. Bjarnarson and Ms. Stoltenberg. *Id.* ¶ 24. That same day, Jackson sent an email to Ms. Bjarnarson, Ms. Stoltenberg, Ms. Bernath, and two team leads, in which Jackson stated that she was taking action to stabilize her anxiety, that she was struggling with the style of management, and that she did not feel that she could continue the pressure of being constantly compared to others and not evaluated on her own performance. *Id.* ¶¶ 21, 24, 27–28. In the same email, she stated that the way Humana's rules were being enforced created an unhealthy atmosphere, and that she felt as if she was "being denied [her] human rights to work and earn a living." *Id.* ¶ 24.

Jackson's performance continued to fall below expectations, and she received further counseling. DSOF ¶¶ 44, 53–54, 66–70. While Jackson acknowledged her performance issues, she attributed them to her anxiety. *Id.* ¶¶ 44, 46, 53, 63, 67, 77. In order to assist her, Jackson's supervisors allowed her to combine her lunch with her project time, which allowed her a one-hour period where she did not have to answer phones. *Id.* ¶ 51. From March 21, 2016 through the end of her employment, Jackson was also allowed to take up to 45-minute periods away from the phone and use intermittent FMLA when she felt she was having an anxiety attack. *Id.* ¶ 52. Jackson was encouraged to talk to her managers when she felt anxious so they could help find alternative solutions. *Id.* ¶ 47.

From the beginning of January 2016 to the end of her employment, Jackson had anxiety attacks at least twice a week, and while Jackson does not specifically recall how often she used FMLA to be away from calls, "it was high." DSOF ¶¶ 48, 77. When Jackson had an anxiety attack, she testified that she was "absolutely" unable to perform any of the essential functions of her position and she would have to leave the phone or go for a walk to deal with that episode. *Id.* ¶ 77. FMLA paperwork completed by Jackson's physician also states that Jackson was unable to perform all job duties when she was having an anxiety episode. *Id.*

### D. PIP and Termination

On April 14, 2016, Jackson was placed on a Performance Improvement Plan (PIP), which notified her that any appearance of phone manipulation would not be tolerated during the PIP and could result in immediate termination. DSOF ¶¶ 66–

70. After receiving the PIP, Jackson requested that she be placed temporarily in a non-calls role as a result of her stress level and anxiety. *Id.* ¶ 72. Jackson wanted to temporarily work as a Processor. *Id.* ¶ 73. This request was denied, as Jackson had temporarily performed some functions of the Processor role and was not successful in completing the functions, and the role required concentration which Jackson stated she did not have the ability to do. *Id.* ¶¶ 74–75. There is no evidence before the Court as to whether there was a vacant Processor position.

Jackson was approved for FMLA at the time that her request to be placed in a Processor role was denied, but she opted not to use an FMLA to be away from her calls role. DSOF ¶ 75. Jackson then contacted Human Resources (HR) appealing her PIP and claiming she was being subjected to discrimination and retaliation for FMLA leave. *Id.* ¶¶ 76–78. HR reviewed all documentation supporting the PIP and informed Jackson that the PIP was appropriate and followed Humana's performance expectations, which Jackson had failed to meet, and as such her allegations were unsubstantiated because the PIP was based on her performance and not due to her FLMA leave. *Id.* ¶ 78.

On May 16, 2016, Humana terminated Jackson. DSOF ¶ 80. The termination document reflects that, since the coaching sessions and PIP, Jackson's performance continued to fall below expectations, and included examples of additional calls after receiving the PIP that did not meet expectations and reflected call manipulation. *Id.*

Jackson filed suit against Humana, asserting claims for age discrimination and disability discrimination, including disparate treatment, failure to accommodate,

retaliation, and hostile work environment. Compl. The previously assigned judge[3] dismissed Jackson's age discrimination claim without prejudice for failure to state a claim. R. 6. Jackson did not amend her complaint to replead an age discrimination claim. Humana now seeks summary judgment on all of Jackson's remaining claims. Mot. Summ. J.

## Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider

---

[3]This case was previously assigned to Judge Kocoras. It was reassigned to this Court on September 28, 2020. R. 57.

only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

## Analysis

### I.    Disability Discrimination Claim

The "ADA prohibits employers from discriminating against qualified individuals due to a disability." *Rowlands v. United Parcel Serv.-Fort Wayne*, 901 F.3d 792, 798 (7th Cir. 2018) (citation omitted). Traditionally, a plaintiff can "proceed under either the direct or indirect method of proof to establish his claim." *Hooper v. Proctor Health Care Inc.*, 804 F.3d 846, 853 (7th Cir. 2015). To prove a disability discrimination claim under the direct method, a plaintiff must show that: (1) she is disabled; (2) she is otherwise qualified to perform the essential functions of the job with or without a reasonable accommodation; (3) she suffered an adverse employment action; and (4) the adverse action was caused by her disability. *Kurtzhals v. City of Dunn*, 969 F.3d 725, 728 (7th Cir. 2020). Under the indirect method, the plaintiff must first "establish[ ] a prima facie case by showing: (1) that [she] is disabled under the ADA; (2) that [she] was meeting [her] employer's legitimate expectations; (3) that [she] suffered an adverse employment action; and (4) that similarly situated employees without a disability were treated more favorably." *Bunn v. Khoury Enterprises, Inc.*, 753 F.3d 676, 684 (7th Cir. 2014). In recent years, the Seventh Circuit has moved away—while not abandoning completely—these two methods, and instead instructs that, "[e]vidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just

11

the "direct" evidence does so, or the "indirect" evidence. Evidence is evidence." *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). The ultimate question, then, is whether there is evidence that "would permit a reasonable factfinder to conclude that the plaintiff's [disability] caused the discharge or other adverse employment action." *Id.*

Humana does not dispute, for purposes of this motion, that Jackson had a disability or that her termination constitutes an adverse employment action. R. 52, Memo. Summ. J. at 5, 7–8. Instead, Humana argues that Jackson cannot establish the remaining elements of a disability discrimination claim. *Id.* at 5. Specifically, Humana contends that Jackson was not otherwise qualified to perform the essential functions of her job; no actions complained of by Jackson, apart from her termination, constitute adverse employment actions; Jackson fails to produce any comparator evidence that similarly situated non-disabled individuals were treated better; and Jackson fails to show that "but for" her disability she would not have been terminated. Memo. Summ. J. at 5–10. The Court addresses Humana's arguments in turn, as necessary.

## A. Adverse Employment Action

The Court begins with Humana's argument that the evidence establishes that Jackson was not subjected to adverse employment actions before her termination. Memo. Summ. J. at 7–8. As noted above, Humana concedes that Jackson's termination constitutes an adverse employment action under the ADA. *Id.* at 7. Jackson's response does not address whether actions that she had previously

maintained were discriminatory (including, but not limited to, coaching and micromanagement from her supervisors; being denied the ability to attend a medical appointment for an eye infection; and being placed on a PIP) constitute adverse employment actions. *See* R. 54, Resp. at 2 ("The issue[] here [is] whether Jackson was fired because of her disability."). As such, by failing to respond to Humana's argument, Jackson has abandoned any discrimination claims she may have had based on any of Humana's actions apart from her termination. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 n.2 (7th Cir. 1996) (plaintiff abandoned claim after failing to respond to arguments in defendant's motion for summary judgment); *see also Barnes v. Nw. Repossession, LLC*, 210 F. Supp. 3d 954, 970 (N.D. Ill. 2016*)* (collecting cases holding same).

## B. Qualified Individual

As Humana correctly argues, Jackson has the burden to establish that she was a qualified individual at the time of her termination. Memo. Summ. J. at 5 (*citing Stern v. St. Anthony's Health Center*, 788 F.3d 276, 285 (7th Cir. 2015)); *see also Kotaska v. Fed. Express Corp.*, 966 F.3d 624, 628 (7th Cir. 2020) ("At summary judgment, it is the plaintiff's burden to provide evidence such that a rational jury could find her to be a qualified individual."). Under the ADA, a "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *see also Stern*, 788 F.3d at 285. The Seventh Circuit applies a two-step test to determine whether a person is a "qualified individual": "First, we

consider whether the individual satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc. . . . If [s]he does, then we must consider whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation." *Stern*, 788 F.3d at 285. Here, Humana does not dispute that Jackson satisfied the prerequisites to be a Customer Care Specialist (and thus that she satisfies the first step). *See* Memo. Summ. J. So the Court turns to the second step of the analysis.

Humana argues that Jackson fails to sustain her burden that she was a qualified individual because the evidence reveals that she was not able to perform the essential functions of a Customer Care Specialist with or without a reasonable accommodation. Memo. Summ. J. at 5–6. The undisputed evidence supports that the essential functions of the position required Jackson to answer customer phone calls the majority of her shift—including not spending excessive time on ACW—and to provide quality customer service—which included not hitting the release button before fully servicing the member, greeting members immediately at the start of the call with no dead air, handling calls completely and transferring them only when necessary, and not engaging in behavior or conduct that was detrimental to customer service. DSOF ¶¶ 9, 17, 22–23, 28, 34, 37, 44, 46, 53–54, 68–69; Pl.'s Resp. DSOF ¶¶ 9, 17, 22–23, 28, 34, 37, 44, 46, 53–54, 68–69.

Humana points out that the undisputed evidence supports this conclusion. Memo. Summ. J. at 5–6. Specifically, Humana points to Jackson's own admission and

FMLA paperwork completed by her physician stating that she was "absolutely" unable to perform her job duties when she was having an anxiety episode. *Id.* (citing DSOF ¶¶ 48, 72, 77). Between January 2016 until her termination in May 2016, Jackson estimated that she had anxiety attacks at least twice a week, if not more, where she could not talk on the phone and would need to calm down. *Id.* at 5 (citing DSOF ¶ 77); *see also* PSOAF ¶ 2 (Jackson reported to Dr. Robinson that she was having panic attacks three times a week). Jackson testified that she was unable to concentrate in her role, and "acknowledged that she would put customers on hold or transfer them back to the 800 number when she had anxiety." DSOF ¶¶ 72, 46. She acknowledged to her supervisor during her March 14, 2016 coaching session that she engaged in other call avoidance behavior, such as using the release button to end calls and allowing dead air prior to speaking to members, because of her anxiety. *Id.* ¶ 44. Moreover, she told her supervisor that she was not reviewing her calls timely because it caused anxiety, and that she was having a hard time staying present and up to date on reading her emails. *Id.* ¶ 53.

During her deposition, Jackson stated she neither believed that she engaged in nor recalled engaging in the behavior that resulted in being placed on a PIP, including call manipulation, and she stated that she believed her supervisors were making false reports, based on her belief that her phone was not working properly. Jackson Dep. Tr. 252:7–254:20. Humana contends that Jackson's belief that she was not engaging in call manipulation, without additional support, does not defeat summary judgment. Reply at 2 (citing, among other cases *Conley v. Vill. of Bedford*

*Park*, 215 F.3d 703, 711–12 (7th Cir. 2000); *Mills v. First Fed. Sav. & Loan Ass'n of Belvedere*, 83 F.3d 833, 843 (7th Cir. 1996)). Of course, the fact that Jackson's statements are self-serving does not, on its own, mean that they cannot defeat summary judgment. *See Sanders v. Melvin*, 873 F.3d 957, 960 (7th Cir. 2017) (explaining that "*[e]verything* a litigant says in support of a claim is self-serving, whether the statement comes in a complaint, an affidavit, a deposition, or a trial" and "[y]et self-serving statements are not necessarily false; they may be put to the test before being accepted, but they cannot be ignored") (emphasis in original). However, Jackson's deposition testimony is that she did not "recall" engaging in call manipulation, and that, when she experienced an anxiety episode, she would have "an out-of-body experience." Jackson Dep. Tr. 252:11–22. Similarly, she testified that she "believe[d]" that her phone continued to have issues in 2016 because she continued to be accused of engaging in call manipulation. *Id.* 254:8–12. And her belief that her phone continued to have issues in 2016 formed the basis for her belief that her supervisors were making false reports about her. *Id.* 253:11–254:20. Her failure to recall engaging in call manipulation and her belief that her supervisors were making false reports are insufficient to create a question of material fact. *See, e.g.*, *Phillipson v. McAleenan*, 2019 WL 4749909, at *7 (N.D. Ill. Sept. 30, 2019), *aff'd sub nom. Phillipson v. Wolf*, 831 F. App'x 212 (7th Cir. 2020) (quoting *Mills*, 83 F.3d at 843 ("While it is true that a 'nonmoving party's own affidavit or deposition can constitute affirmative evidence to defeat a summary judgment motion, conclusory statements . . . do not create an issue of fact.")). As noted above, Jackson did not

dispute any of Humana's statements of fact, and therefore they are deemed admitted. *See supra* Background, Section I. Humana's statements of fact rely on record evidence—including several statements made by Jackson during her deposition—showing that Jackson did indeed engage in phone manipulation when she experienced anxiety. *See, e.g.*, DSOF ¶ 46 (citing Jackson Dep. Tr. 141:11–22 ("If I put someone on hold, it's when I'm dealing with this anxiety . . . because I can't control when it's going to happen"); *id.* 142:10–143:10 ("[I]f a call come[s] in and I just now have an anxiety, I will pick it up and transfer it and take myself out and then take a break. . . .")). Therefore, the Court agrees with Humana that Jackson's deposition testimony that she did not recall engaging in call manipulation and that she did not "believe" that she did so, are insufficient to create a question of fact as to whether she engaged in call manipulation.

In her response, Jackson contends that the Court should deny the motion for summary judgment because Humana has not provided the "metrics" needed to ascertain whether she was falling below the necessary standard. Resp. at 2–3. The Court agrees with Humana that Jackson's metrics argument is a red herring. *See* Reply at 5. Jackson, argues Humana, was not terminated because she was not meeting specific metrics, such as the number of calls she took a day or the speed in which she completed her calls. *Id.* True, there is some evidence in the record that Jackson was counseled on certain metrics, such as reducing her ACW. *See, e.g.*, DSOF ¶¶ 22–23. However, the undisputed evidence also shows that Jackson—even with the accommodation of allowing her to take breaks from taking calls and using

intermittent FMLA when she felt she was having an anxiety attack, DSOF ¶¶ 51–52—was not able to perform the essential functions of her job; namely, providing quality customer service when she took phone calls, including, but not limited to her use of call manipulation, and taking responsibility for achieving results.

The cases cited by Humana—which Jackson fails to address in her response—support the finding that Jackson was not qualified to perform the essential functions of her job with or without accommodation. Memo. Summ. J. at 6–7 (citing *Emerson v. Northern States Power Co.*, 256 F.3d 506 (7th Cir. 2001) (phone operator who answered "safety-sensitive calls" regarding gas and electrical emergencies 5%–10% of the workday, and who was susceptible to anxiety attacks, was not a qualified individual); *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384 (6th Cir. 2017); *Hoppe v. Lewis Univ.*, 2011 WL 4578352, at *9 (N.D. Ill. Sept. 30, 2011), *aff'd*, 692 F.3d 833 (7th Cir. 2012) (professor was not a qualified individual because her unpredictable anxiety attacks prevented her from timely communicating with students, committees, colleagues, and administrators—an essential function of her job—and which no reasonable accommodation could overcome).

*Williams*, although not binding on this Court, is instructive. There, the plaintiff, like Jackson, worked as a customer service representative at a call center and suffered from unpredictable anxiety attacks. *Id.* at 394. The plaintiff admitted that she could not perform her job duties during an anxiety attack. *Id.* at 393. Therefore, the court found that the plaintiff's requested accommodation of a flexible start time and ten-minute breaks every two hours to be inadequate because she may

suffer from anxiety attacks between scheduled breaks. *Id.* at 394. As such, the court found that the plaintiff was not qualified even with the requested accommodations. *Id.* at 394.

Finally, although neither party raises the argument as part of the qualified individual analysis, the Court must address Jackson's request to be temporarily placed in a non-calls role as a Processor, which Humana denied. DSOF ¶¶ 72–75. As Humana acknowledges, "the ADA may require an employer to reassign a disabled employee to a different position as reasonable accommodation where the employee can no longer perform the essential functions of their current position." *Stern*, 788 F.3d at 291 (internal quotation and citation omitted). However, the plaintiff bears the burden to show that a vacant position exists for which she is qualified. *Ozlowski v. Henderson*, 237 F.3d 837, 840 (7th Cir. 2001) (citing 29 C.F.R. pt. 1630. App.). Here, Jackson has not submitted evidence demonstrating that a vacant Processor position (or any other non-calls position for which she was qualified) was available. *See* DSOF ¶ 73; Pl.'s Resp. DSOF ¶ 73. (Jackson was not aware of whether there were any openings for a Processor position at the time she made her request). Accordingly, Jackson has not sustained her burden of establishing that reassignment to the Processor position was a reasonable accommodation. *See Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 482 (7th Cir. 2017) (upholding summary judgment where the plaintiff failed to prove there were any vacant positions open at the time he was terminated).

As a result, the Court agrees with Humana that Jackson failed to meet her burden in establishing that she was a qualified individual at the time of her termination. Because Jackson has failed to show a triable question of fact on the question of whether she is a qualified individual, her discrimination claim fails as a matter of law. *See Kotaska*, 966 F.3d at 632. Accordingly, the Court does not address Humana's remaining arguments as to Jackson's disability discrimination claim.

## II.     Failure to Accommodate

To prevail on her failure to accommodate claim, Jackson must show that "(1) [she] was a qualified individual with a disability, (2) [her] employer was aware of his disability, and (3) the employer failed to reasonably accommodate [her] disability." *Youngman v. Peoria Cnty.*, 947 F.3d 1037, 1042 (7th Cir. 2020). As the Court discussed above, Jackson has failed to create a triable question of fact as to whether she was a qualified individual. *See supra* Section I.B. Therefore, similarly to Jackson's disability discrimination claim based on her termination, her failure to accommodate claim also fails as a matter of law. *See Hooper*, 804 F.3d at 852. Again, the Court need not address Humana's remaining arguments as to Jackson's failure to accommodate claim.

## III.    Hostile Work Environment and Retaliation

As stated above, Jackson asserted claims that she was subject to a hostile work environment based on her disability, and that she was terminated in retaliation for engaging in protected activity. *See* Compl. However, Jackson failed to respond to Humana's arguments that it is entitled to summary judgment on those claims. *See*

Resp. Humana is correct that, by failing to respond, Jackson has conceded that Humana is entitled to summary judgment on these claims. *See Bombard*, 92 F.3d at 562 n.2; *see also Barnes*, 210 F. Supp. 3d at 970. Therefore, summary judgment is granted as to Jackson's hostile work environment and retaliation claims.

### Conclusion

For the foregoing reasons, Humana's motion for summary judgment [51] is granted. Civil case terminated.

Dated: June 27, 2022

_____
United States District Judge
Franklin U. Valderrama